Move to case number 3, Snow v. Pfister Ms. Thompson? Thank you, Your Honor. Good morning. This case is not as complicated as the procedural history would suggest. The evidence against appellant Jamie Snow that was presented at trial was really two categories and the first was a series of people who were eager to come to court to tell the jury that Jamie Snow had confessed to them at various times over about an eight-year period and those witnesses were allowed to testify without the defense having a meaningful opportunity to cross-examine them because the best evidence that would otherwise have been available to the defense had been withheld and that was evidence that these witnesses had been incentivized or had a personal interest in the outcome or personal interest in participating in the case either because they had been offered deals, because they were seeking courage to give the testimony that they gave. There's eyewitness aspects to this case but it's not really an eyewitness case and that seems to be what the respondent himself argues in the response that Danny Martinez was already pretty well impeached at trial so he's not the basis for this conviction either. What Mr. Snow has identified in his habeas petition and in the two post-conviction petitions that he litigated through the Illinois courts are numerous pieces of classic Brady evidence, critical impeachment and numerous ways that his counsel was ineffective. The state's case was already a difficult one at trial because it was built on incredible people and that's an important point for this court to consider because the main issue in Mr. Snow's appeal here is prejudice. There is evidence that was clearly withheld and there are things that his counsel clearly didn't do so the issue then becomes would this have made a difference? Has Mr. Snow presented evidence that is sufficient to undermine our confidence in the outcome and could the Illinois courts have reasonably concluded that it didn't? Taken alone or taken cumulatively and the cumulativeness issue is an important one for Mr. Snow in this appeal. There is no way that the Illinois courts could have reasonably concluded that this evidence would not have made a difference. Why not? The withheld Brady evidence pertained only to some of the, what was it, 12 witnesses that testified about confessions? There are 13 people. 13, okay. There's 13 people your honor who in one way or another claimed that Mr. Snow had made inculpatory statements to them and it's true that the appeal before this court focuses on four of those people but it's not true that the other nine were just you know got up there said Jamie Snow confessed to me and that's that's the end of the story that's all there is that's not true. These people were impeached with other evidence already at trial and there's other there's other evidence in the record that were there to be a retrial would would affect the impact of that testimony. Right but it's certainly reasonable for the state courts to conclude that the sheer volume of the confession evidence based on the number of witnesses that he spilled his guts to over the course of this multiple year period between the crime and his apprehension plus his flight, his concealment, his false name, you know there's abundant evidence of consciousness of guilt here and that's what the case was built on you're right it's not an eyewitness case the eyewitness testimony isn't very good. Respectfully no your honor. Volume doesn't really mean anything in this case and the reason why is you know these are people who are giving various versions I mean they're not all saying the same thing for starters and they're giving various versions of an incredible story and as evidence starts to come out that there have been deals that have withheld it raises a question about the credibility of everyone. The circumstantial evidence also isn't that good either and we explained in our reply why that's the case. You know Mr. Snow was not a great guy and so if the circumstantial evidence is going to be that he didn't want to participate in an investigation into the case in which he was ultimately convicted of obstruction or this case that he you know had this prior criminal conviction that is not strong evidence of consciousness of guilt and the other thing about these supposed confession witnesses is when you start looking at them one by one this is just a lot of smoke this is not you know people who are giving credible testimony about credible situations in which Mr. Snow supposedly confessed to them. This is people who as the new evidence shows were writing to the state in the early 90s you know six years before Mr. Snow was arrested saying I'd love to help you on this case you know what do you need from me this isn't people who are saying this has been you know hurting my heart all these years I just need to tell you that Jamie Snow confessed to me these are people who are eager to come forward and once a couple of these people have these problems with their testimony that they are looking for deals that they had been threatened and cajoled as Mr. Shield told investigators on two different occasions it raises a question about the course of this entire investigation. This is not a case where hey you can take away three of the witnesses but there's all these other people that are left to support the conviction it is not that case at all. The other thing that's important to take into account is the posture in which this court is considering. How many eyewitnesses were there? Well we submit there were none but as far as testimony goes you know Mr. Martinez obviously gave the testimony he gave and Carlos Luna did not identify Mr. Snow at trial what he did do was say I'm 200 feet away across the street you know I see someone come out he does view a lineup and he says Mr. Snow looks most like the person he saw come out but he doesn't make an ID and as we presented there's evidence even from a new memo from the state attorney's office that they that an investigator went up to Mr. Luna's window looked out that window the next day and they were themselves incredulous that he had any possibility of making any ID. I think the eyewitness that's left actually your honor is Gerardo Gutierrez and Gerardo Gutierrez identified he said that he was in the convenience store earlier that night and the person that he describes is a person that clearly doesn't match Jamie Snow. That's a person who's got this chin scar that is not Jamie he didn't identify Jamie Snow as the person that he saw so it's not an eyewitness case at all. It also raises again questions why is Danny Martinez testifying and saying that Mr. Snow was the person he saw when he doesn't say that for years and he appears to make that identification shortly before trial when he's meeting again with authorities. This raises questions about all of the people. Right he's impeached on all of that that his ID is based on extraneous stuff not the not the lineup because he couldn't identify anybody at the lineup right he saw your client's picture in the paper. What defense counsel does do at trial is focus on the length of time that it took him to make an ID and he does point out that there was a lineup where he wasn't able to identify Mr. Snow and Mr. Martinez has the explanation of the what defense counsel doesn't get to present is that when Mr. Martinez looked at mug books the night or the day after this happened he's seeing Mr. Snow's picture in those mug books and he's not picking him out he's actually picking out other people he's saying there's two people this looked like and one of the people that he picks out in those mug books is actually the same person that Gerardo Gutierrez picked out in the mug books when he looked at them. We don't have full information on that as we've explained throughout our briefs because this is information we primarily gotten through FOIA. We haven't even had any opportunity for an evidentiary hearing or discover discovery at any level of this case so there's holes but they're not Mr. Snow's fault he's done his best to try to fill them in and the other thing about Danny Martinez that he never got to present is this issue about Jeff Pelo and you when you read Jeff Pelo's trial testimony carefully it's clear that the prosecutors view of Pelo is I'm gonna argue that he was distracted by running this plate you know that's what the prosecution is trying to get him to say and going through all this well how long were you doing that you were fighting with the dispatcher on the phone when the defense counsel gets up to cross-examine Mr. Pelo he simply he tries to ask him well you had a good view of the door and Pelo gives sort of a wishy-washy answer about that but what we know from Mr. Pelo's interview before the trial which was not used in his cross-examination and what we now know from his affidavit is he's saying of course I was looking at that door you know I'm there because the silent alarm is pulled and I am trying to figure out what's going on in there and definitely nobody came out. It's the difference between Martinez being sort of a mistaken guy or a clueless guy and being a liar and Pelo says this guy is a liar so why is somebody claiming that they saw Jamie Snow come out of the gas station when they're not mistaken that it was somebody else not Jamie but they are actually lying about that that is a significant difference from the case that the jury heard at trial. I want to go back to the point of prejudice because again I think that's what this case is really about and ask and go through some of the other reasons why this case would be different if it was retried and we've talked about the Martinez points as well and there's even more impeachment of Martinez which is also critical and there wasn't a sniff of it that was presented at the original trial and that's that he knew Mr. Snow from growing up there's multiple people who presented affidavits saying this wasn't he's trying to pick out somebody you know just based on the description or what he's recalling but this is that he actually knew he told people you know it wasn't Jamie that's not who I saw he there's the polygraph the polygrapher reports where there's notes in the polygraph report where he's telling somebody at least some point prior to July of 1994 which is when that polygraph report is from that Jamie Snow was not who he saw and there's obviously the Paul Williams testimony which although mr. Williams testified that aspect of what he saw was never never we've talked about about Carlos Luna and answer the court's question he's not an eyewitness and what this jury didn't hear is he could not even make a composite he could not even give the composite sketch artist enough information about the person he saw to make a composite sketch and that is a significant difference from saying you know I sort of got a view of this person I'm looking at a lineup I'm able to say this looks most like the person I saw and when you're sitting you know next you're sitting in front of a composite sketch artist and you're not even able to do enough for that person to make a sketch when that's their job that is also significant evidence that's different and we've talked as well about the Brady evidence and the differences that would be there. If the court doesn't have other questions at this time I'd like to save the rest of my time for rebuttal. Thank you. May it please the court, counsel and assistant attorney general Brian Klish on behalf of the respondent. So as petitioner noted this was not an eyewitness identification case in fact the state led with that and well didn't lead with that in opening argument but it stated in oral argument mark these words this is not an eyewitness identification case and the reason for that is because Martinez identification was not very good everyone knew that at trial everyone knew that on direct appeal everyone knew that on post conviction appeal it's been the same throughout despite petitioner's that just a little bit more impeachment of Martinez would have made the difference in this case it wouldn't have he was amply impeached. Trial counsel testified at a post trial hearing that in his experience when you've hammered a witness enough eventually you you risk making a mistake and opening up a new can of worms here and that's what could have happened here and so not only was there no prejudice for not further impeaching Martinez but it wasn't deficient performance either and so I think petitioner's strategy then is to try to cast this cloud over the entire proceedings by saying you know we've got these Brady evidence but even the Brady evidence isn't what it seems. So for instance Shawl, Shawl testified at trial that he knew that the federal sentencing judge was informed about his likely cooperation in this case the only thing he testified was that he wasn't sure whether the judge took that into consideration that's the only difference between what was presented to the jury and what was available publicly available in the federal docket and so that is the case then we also have it's not clear that this evidence was withheld there's allegations that this evidence was withheld and some of that has to be state courts took it as true but not all of it and we also have several confessions that are not tainted by any Brady evidence we have Jody Winkler's confession in Florida we have Bill Gattis who's a preacher he what witnessed someone say you know they were all at the party they were all downtrodden and he said what's going on here they said you know Jamie shot the boy in the park station and the petitioner didn't say anything to that we have Ed Hammond's confession in prison which was corroborated by the detail that Snow told him he knocked something over on the way out and on the record on page 1939 we know that there was a stool knocked over by the victim's body we have petitioner trying to give information about the murder to officers Thomas and Bernardini on the way back from St. Louis or on the way that he fled to Missouri within a month of the crime and was hiding in an attic for six hours then refused to participate in a lineup threatened to fire his attorney and was emotionally distraught because he wouldn't participate in this lineup the only reason he participated is because they threatened to force him to and then he lied about that at trial and getting to petitioner's trial testimony a little bit more even some of these so-called recantations are under they still contradict petitioner's trial testimonies so Palumbo for example said you know first there was the boom boom I shot the kid that was shortly after the crime he said petitioner told him that and then petitioners gave him another more detailed confession later and Palumbo's recantation is well I knew he was kidding about that which is on its face implausible but it also contradicts petitioner's trial testimony which was I never met him I never saw him that second time so none of that happened so these recantations aren't as helpful as they seem either going back to the evidence against him we have Daunton Roberts testified that Snow said these drawings were of him and asked people to remove them now she partially recanted that and said actually he didn't ask me to take him down I took them down because I was his friend which is not particularly exculpatory if she thought these drawings looked like him as petitioner had otherwise testified that they looked like him and one more point regarding prejudice petitioner reasonably says you know we really need all this you know this is a cumulative error claim we have to rely on the cumulative prejudice but because most of his Brady claims are defaulted in one way or another he can't rely on the cumulative prejudice he has to show cause and prejudice for each individual claim and that's the McLeese case that we cite in our brief and that the district court relied on so because of the ample evidence against petitioner that is not tainted by the elect the Brady allegations or the Strickland allegations and because he has to show cause and prejudice individually and because these recantations some of them at least are not what they seem and many of them are not you know many of the much of the trial testimony is not tainted by the recantations we ask that this court affirm the judgment of the district court thank you thank you counsel you have four minutes I mean responded responded tells you that what the petitioner what the appellant here is trying to do is to cast a cloud that sort of gives this idea that all we're doing here is sort of saying well there's some stuff and you should think about it but that's not what this case is about is all at all and that is not what prejudice for purpose it looks like well that's not what prejudice for purposes of either Strickland or Brady requires your honor it is evidence that's sufficient to undermine the outcome and that is very clearly under the case law not more likely than not it's not a question of I think it's likely this guy would still be convicted the question is can you still have confidence in this verdict after all of the evidence that we now know was withheld and after the evidence that we now know creates problems significant problems with all of this eyewitness testimony except we're here under 2254 D so our review is highly deferential that's right and the question is could the state court have reasonably concluded that this evidence was not sufficient to undermine the outcome that's absolutely right your honor and a reasonable a reasonable court could not have concluded that that's hard to say when nine of the 13 confession witnesses remain untainted well again your honor they do not remain untainted that's absolutely incorrect and let's go through them right now at Palumbo he has this affidavit where he says I was trying to get a deal and his you know testimony in the first place is basically at a when they're stopped in traffic Jamie's like hey I killed that guy boom boom you know that evident that testimony was already incredible and he says and admits I was looking for a deal Steve Shield we've talked about and it sounds like the respondent concedes that there's some issues at least there he's recanting and saying people came to Missouri and pressured me until I you know gave up and agreed to do what the state wanted Bruce Roland there's significant amounts of impeachment of Bruce Roland his wife is saying he told her I lied and I'm trying to and not only did he try to get a deal but he actually got an impossible sentence on his DUI's his pending DUI's in exchange for testifying in this case and that's something that was never presented at trial Bill Moffitt he told this witness Dennis Hendricks that he got a time cut in exchange for testifying Kevin Shaw got a deal in Florida did a jury hear all this no I mean these are the things the jury didn't hear and I'm telling this court if this case were retried there would be evidence about each and every one of these 13 people that would cause a jury to say I question that I don't believe it and more importantly why is the state calling 13 people all of which have significant problems with their testimony to claim that Jamie Snow confessed and why is the state putting on Danny Martinez who it sounds like we all agree is not telling the truth is a liar is contradicted by the responding police officer why is that their case why is that their case in lieu of you know evidence actual evidence that Jamie Snow did this and you're telling me there's circumstantial evidence you're telling me he's not a great guy this we do not convict people on the basis of being a usual suspects person and that is what this case boils down to when this court considers all of the new evidence this is not a verdict that in the first place was a you know easy case it wasn't a you know case where there's no question mr. snow did it and it's definitely not that case now it's a question that everyone should ask themselves you know how can we have confidence in a verdict where we know that the state was cutting deals pressuring people and not bothering to tell the defense that and that's something the jury would have questions about to you know why is this the way the state has to make the case against this person in in the absence of actual evidence that mr. snow did it and to go back one more time on the Brady point you know the state the state says well you know if you if you don't get them all then you haven't won again that's not the standard for undermining confidence but second of all as we've argued in our briefs the jury would have a reason to question all of these witnesses in light of evidence that clear evidence that some of them were specifically incentivized by these deals and it would cause them to question the impeachment evidence that mr. snow either had for each and every one of these witnesses or that he now has in light of the evidence that's been discovered about them since that time I want to end with this mr. snow was not asking this court for a get out of jail free card you know he's not asking to walk home today he's not even asking for a new trial right now he's asking for an opportunity to present his claims he has never had an evidentiary hearing he didn't get one at the district court the state court you know never held an evidentiary hearing on these issues so that's why the court now has the record it's had you know he chose a jury trial because he wanted a jury to hear all the evidence and to make a decision about his innocence or his guilt and all he's asking this court to do is to remand this case for an evidentiary hearing so he can be fully heard on all of the evidence that he's presented which does undermine confidence in the outcome of his conviction thank you very much counsel case is taken under advisement and we move to the